```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

IN RE MENTOR CORP. OBTAPE           \* MDL Docket No. 2004
                                       4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS       \*
                                       Case Nos.
LIABILITY LITIGATION                \* ALL

O R D E R

A three-judge panel of the Eleventh Circuit Court of Appeals issued an unpublished opinion reversing this Court's summary judgments in favor of Defendant Mentor Worldwide, LLC in twelve cases that were transferred to this Court from Minnesota for pretrial purposes pursuant to the multidistrict litigation statute, 28 U.S.C. § 1407. *Rogers v. Mentor Corp.*, No. 16-10119, 2017 WL 928497 (11th Cir. Mar. 9, 2017). The three-judge panel found that a genuine fact dispute existed in each of the cases as to when each plaintiff became aware of a causal connection between her injuries and Mentor's product, and thus when her claim accrued for statute of limitations purposes. Although this Court certainly respects the application of the panel decision to these twelve cases, the Court has concerns about the ramifications of this opinion on other cases in this multidistrict proceeding. The purpose of this order is to advise counsel for the parties in this proceeding of those

concerns and how the Court intends to address them going forward.

The Court's concerns do not arise from the panel's disagreement with this Court's conclusion that genuine factual disputes did not exist regarding when each plaintiff's claim accrued under Minnesota law. That evidence apparently is subject to more than one interpretation, and in our system, the Court of Appeals has the last word. But this Court reads the panel's decision to be broader than that. It appears that the panel concluded that Minnesota and Georgia have the same statute of limitations accrual rule, and if that is the rule that this Court must now apply in all of the cases in this multidistrict litigation which have a statute of limitations similar to Minnesota's, this development has significant consequences going forward. To fully understand these consequences, it is necessary to examine the standard that this Court applied in these twelve cases and many other cases in this multidistrict litigation proceeding and to compare that standard with the one that the appeal panel in these twelve cases appears to have applied.

Preliminarily, the Court must note that the appeal panel misunderstood the standard that this Court applied. The panel opinion suggests that this Court did not understand that under Minnesota law the plaintiff must be reasonably aware of a

2

"causal" connection between the product and her injuries before her claim accrues. The panel reached this conclusion because this Court's order referred in some places to causal connection as simply a "connection between the product and the plaintiff's injuries" as a shorthand for "causal connection." A careful review of this Court's order, however, readily reveals that it applied a "causal connection" standard—not some general "connection/relationship standard. *See, e.g.*, *Kearse v. Mentor*, 4:12-cv-319, 2015 WL 8578364, at *3 (M.D. Ga. Dec. 9, 2015) (where this Court noted that Minnesota law requires "evidence of a *causal connection* between the injury or disease and the defendant's product, act, or omission" (emphasis added) (quoting *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992)); *id.* (where this Court stated that a "plaintiff who is aware of both her injury and the likely *cause* of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause" (emphasis added) (quoting *Klempka*, 963 F.2d at 170)); *id.* at *4 (where this Court found that "each Plaintiff knew that she suffered some injuries *caused* by ObTape well before" she saw television advertisements regarding mesh complications (emphasis added)).

It is clear, at least to the undersigned, that this Court applied a causal connection standard in the twelve cases

3

reversed on appeal. This Court did not, however, apply the more liberal causal connection standard that the panel appears to have applied—a standard that requires that a plaintiff be aware of both a causal connection between the defendant's product and her injuries plus a causal connection between her injuries and "wrongful conduct" by the defendant relating to the product. This Court is now duty bound to apply this standard going forward in this multidistrict litigation proceeding.[1] Moreover, when these cases are transferred back to the Minnesota courts, those Minnesota courts will likely be bound by the Eleventh Circuit's interpretation of Minnesota law.[2]

Having handled hundreds of cases transferred from multiple jurisdictions in this multidistrict litigation, this Court has learned that for states that have a statute of limitations discovery rule, the discovery rules can be divided generally

---

[1] Although the panel opinion is unpublished and thus not binding precedent in other cases, 11th Cir. R. 36-2, it is certainly binding in these twelve cases, and as a practical matter, it is binding on this Court in other cases to the extent that this Court does not want to be reversed again or take its chances that another panel may not follow this panel's unpublished opinion.

[2] See In re Ford Motor Co., 591 F.3d 406, 411 (5th Cir. 2009) (noting that the law of the case doctrine, with some exceptions, applies to transferor courts in MDL proceedings). Even if an exception to the "law of the case" principle allowed the Minnesota transferor district court to ignore a decision by the transferee district court, this Court is unaware of any authority that would permit that district court to ignore the Circuit Court of Appeals decision in these cases. If after remand the Minnesota district court follows the Eleventh Circuit panel decision and that decision is then appealed to the Eighth Circuit Court of Appeals, the question remains as to whether the Eighth Circuit can then issue a ruling that is contrary to the ruling of another Circuit Court of Appeals in the same exact case.

into two categories. In many states, including Florida, Illinois, Indiana, Kentucky, Minnesota, Oklahoma, South Carolina, Texas, and Wisconsin, the plaintiff's claim accrues when she discovers, or in the exercise of reasonable diligence should have discovered, that there is a causal connection between the product and her injuries. *See, e.g., Thielke v. Mentor Worldwide, LLC*, No. 4:13-cv-130, 2016 WL 1578755, at *2 (M.D. Ga. Apr. 19, 2016) (applying Wisconsin law); *Kearse*, 2015 WL 8578364, at *3 (applying this Court's interpretation of Minnesota law). The key causal connection is between the product and the plaintiff's injuries, not that the plaintiff also knows that she may have sufficient evidence at that time to file a lawsuit. Under this rule, the plaintiff, upon learning of a potential causal connection between a product and her injuries, has whatever time is permitted by the statute of limitations (in Minnesota, six years) to investigate that connection in a diligent manner and file a claim if that investigation supports one. This rule is the one that this Court believed the Minnesota state courts would apply.

Although it is not entirely clear from the appeal panel's opinion, it appears that the Eleventh Circuit panel did not apply this standard. Instead, it found that for purposes of determining when a claim accrues for a latent injury in a products liability action, Minnesota and Georgia law are the

5

same. Thus, the panel applied the more liberal Georgia standard, which is different than the standard this Court applied.

This more liberal standard takes the causal connection standard a step further than the standard in those states listed previously and injects a "basis of liability" component: a cause of action does not accrue until "the plaintiff knew or should have known that 'his alleged injury was the product of the *wrongful conduct* of any [defendant].'" *Bergin v. Mentor Worldwide, LLC*, No. 4:13-cv-135, 2016 WL 3049491, at *1 (M.D. Ga. May 27, 2016) (quoting *Welch v. Celotex Corp.*, 951 F.2d 1235, 1238 (11th Cir. 1992)); *accord Ballew v. A. H. Robins Co.*, 688 F.2d 1325, 1327 (11th Cir. 1982) (finding that a cause of action did not accrue under Georgia law until the plaintiff "knew or with reasonable diligence should have discovered the causal connection between her injuries and [the product manufacturer's] alleged misconduct"). This more liberal standard requires not only that the plaintiff be objectively aware of a causal connection between her injuries and the product, but that she must also be aware of a causal connection between her injuries and some type of *misconduct* (e.g., negligence, defective design) by the defendant.

In reversing this Court, the panel stated that the Minnesota rule "mirror[s]" the Georgia rule and cited to *Ballew,*

6

688 F.2d at 1327, as the standard. *Rogers*, 2017 WL 928497, at *8.  In *Ballew,* the Court of Appeals clearly articulated the standard: "a cause of action does not accrue so as to cause the statute of limitations to run until a plaintiff discovers or with reasonable diligence should have discovered that he was injured."  *Ballew*, 688 F.2d at 1327 (quoting *King v. Seitzingers, Inc.*, 287 S.E.2d 252, 254 (Ga. Ct. App. 1982). "*Nor will a cause of action accrue until the plaintiff knew or through the exercise of reasonable diligence should have discovered the causal connection between the injury and the alleged negligent conduct of the defendant.*"  *Id.* (emphasis added). The *Ballew* court further stated, "Here we are concerned with whether or not prior to [the operative statute of limitations date] appellant knew or with reasonable diligence should have discovered the causal connection between her injuries and appellee's *alleged misconduct.*" *Id* (emphasis added).  Thus, following Eleventh Circuit precedent interpreting Georgia law and concluding that Minnesota law mirrors Georgia law on this issue, the appeal panel determined that for statute of limitations accrual purposes, the plaintiff must not only be aware of a "causal connection" between her injuries and the product, but she must also be reasonably aware of a "causal connection" between her injuries and "misconduct" by the defendant related to the product.  Under this rule, until the

7

plaintiff is aware of both the causal connection and the liability connection, she apparently has no duty to be diligent to discover whether she has a claim.  *See In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 711 F. Supp. 2d 1348, 1380 (M.D. Ga. 2010) (finding, under Georgia law as stated by the Eleventh Circuit in *Welch*, that there was a fact dispute on when the Georgia plaintiffs' claims accrued because there was evidence that they were not on notice that a possible defect in ObTape caused their injuries until they read articles about product liability suits regarding the product).[3]

The Court observes that under the liberal Georgia rule, as interpreted by the Eleventh Circuit to now apply in Minnesota, the statute of limitations may not begin to run until a plaintiff talks to a lawyer who tells her that she has a legal claim, even though the product is protruding through her tissue and any reasonable person would know there is some causal connection between that protrusion and the product.  Her contention that no one told her that the protrusion of the product may have been caused by a defect in the product or negligence by the manufacturer requires that a jury decide whether her claim is barred under the statute of limitations.

---

[3] In both *Ballew* and *Welch*, the Eleventh Circuit stated that this rule applies in "continuing tort" cases.  *Welch*, 951 F.2d at 1236; *Ballew*, 688 F.2d at 1327.  This Court has never had occasion to rule directly on whether the alleged claims arising from ObTape are in fact "continuing torts" for statute of limitations purposes.

8

In many of these cases, the plaintiffs contend that they first became aware that they may have a claim when they saw a lawyer soliciting such claims on television. Imagine that: a "lawyer advertising claim accrual rule." Some may even argue that a claim does not accrue until the lawyer hires an expert who reports that the defendant's product is defective or was negligently manufactured, thus leading to the absurd conclusion that a claim may not even accrue for statute of limitation purposes until *after* a lawsuit has been filed and discovery obtained.[4] The Court does not doubt that a state could adopt such a liberal rule, and according to previous Eleventh Circuit precedent, Georgia has done so. And now according to the panel opinion in this case, Minnesota has as well.[5]

This Court does not intend to suggest that the manner in which Mentor's motions for summary judgment were decided—by a district judge and circuit court of appeals with no connection to the transferor court venue and with limited opportunity for review by the transferor courts—was unusual for multidistrict litigation proceedings. It is not uncommon in these proceedings for the transferee district judge to decide dispositive issues

---

[4] The Court hastens to add that it is not suggesting that the panel decision here is absurd, only that lawyers will likely apply it absurdly.

[5] One could conclude (perhaps the Minnesota courts upon remand if they find that the Eleventh Circuit misinterpreted Minnesota law) that the panel's reference to the liberal Georgia standard is simply dicta because this Court's summary judgments were reversible even under the more conservative standard.

9

using the law of other jurisdictions and have those decisions reviewed by the circuit court in the jurisdiction where the transferee judge sits. It is also not remarkable that some of those cases never make it back to their district of origin because the dispositive motions are granted and affirmed in the transferee jurisdiction. And although remand back to the transferor court is infrequent in most multidistrict litigation proceedings, for those cases that are remanded, it is not typically noteworthy that the decisions made by the transferee court are binding on the transferor court. But perhaps this phenomenon of judges in jurisdictions distant from where the case was originally filed deciding cases that in aggregate represent a substantial portion of the federal products liability docket should be viewed with more caution. That caution should be particularly heightened when those judges are deciding an issue of state law that is unclear. When a transferee court recognizes, as the appeal panel noted here, that "state court holdings are nonexistent or ambiguous" on a potentially dispositive issue, *Rogers*, 2017 WL 928497, at \*6, perhaps the better course would be to certify the question to the appropriate state supreme court if that process is available.[6] Of course, a transferee court always has the option

---

[6] It appears that the Minnesota Supreme Court will receive certified questions from any federal court. See Minn. Stat. Ann. § 480.065.

to suggest remand of any case to the transferor court to assure that these issues are decided by the courts where venue properly lies, where the case will eventually be tried, and where any final judgment will be appealed.[7]  In retrospect, this Court may should have pursued one of these avenues for the cases involved in these appeals.  But the purpose of this order is not to dwell on the road not taken. It is to chart the course forward.

To promote judicial economy and comity, this Court will scrutinize future motions for summary judgment that are based on the statute of limitations to determine whether the parties disagree on the state law standard to be applied.  If disagreement exists as to the standard, the Court will likely suggest remand of each such action back to the transferor court. Accordingly, in future motions for summary judgment based on the statute of limitations, Mentor shall include in its motion a separate and clear statement of the applicable standard, and in

---

Quite frankly though, this Court did not believe the Minnesota statute of limitations claim accrual rule to be unsettled until the Eleventh Circuit panel decision.

[7] This Court recognizes that the rationale supporting this approach would also support the remand of all cases in which dispositive motions have been made that are based on state law.  The Court does not suggest that this is always the best approach, but if the legal standard for deciding a dispositive motion depends upon interpretation of an unclear or unique issue of state law and the primary purposes of the consolidation have been accomplished, the Court should certainly consider whether remand is appropriate.

11

response, each plaintiff shall include a separate and clear statement as to whether she agrees with that standard.[8]

IT IS SO ORDERED, this 14th day of March, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[8] The Court notes that this MDL proceeding is fully mature and that all common discovery has been completed for all cases. Thus, remands at this stage would not frustrate the purposes of the MDL consolidation, which have largely been accomplished. The Court has simply retained many of the cases at the parties' request so that the parties may more efficiently conduct plaintiff-specific discovery in one forum. The interest of obtaining legal rulings on unique state law issues from the jurisdiction where that law applies, however, outweighs the convenience of the parties in the conduct of their plaintiff-specific discovery.